UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| CHARLES TERHUNE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil No. 3:20-cv-00611-DJH |
| V. ) | |
| ) | |
| LESLIE K. COOKSEY AND ) | |
| AAA COOPER TRANSPORTATION ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANTS' MEMORANDUM OR LAW IN SUPPORT
OF THEIR MOTION TO EXCLUDE TESTIMONY AND
EVIDENCE FROM PLAINTIFF'S EXPERT WITNESSES**

Defendants, AAA Cooper Transportation and Leslie K. Cooksey ("Defendants"), by counsel, hereby respectfully submit this Memorandum of Law in Support of their Motion to Exclude testimony and evidence of Plaintiff Charles Terhune's experts, Dr. Steven Ganzel and nurse Laura Lampton, pertaining to certain alleged required future medical treatment and associated costs, and state as follows:

**BACKGROUND FACTS**

This is a personal injury action arising from a motor vehicle collision that occurred on March 29, 2019 at the intersection of South 7th Street and West Magnolia in Louisville, Kentucky. (*See* LMPD Accident Report, attached hereto as **Exhibit A**). Specifically, Defendant Leslie Cooksey was driving south bound on South 7th Street when the front bumper of his truck struck the front driver's side of Plaintiff's vehicle as Plaintiff entered the intersection. (*Id.*). Neither Mr. Cooksey nor Plaintiff needed any medical assistance at the scene. (*Id.*; *See* Plaintiff's Depo., p.

49 (pages cited from Plaintiff's deposition are collectively attached hereto as **Exhibit B**) ("I had felt fine at that time.").

Notwithstanding the fact that he did not need any medical assistance at the time of the incident, Plaintiff now asserts that his low back was significantly injured in the incident. (Plaintiff's Depo., p. 52). As part of Plaintiff's medical treatment, Plaintiff sought treatment from Aptiva Health, where he was seen by Dr. Steven Ganzel. (*Id*. at 65-66). Among other treatments, Plaintiff underwent radiofrequency nerve ablations ("RFAs"). (*Id*. at 66). Specifically, Plaintiff had two RFAs in September 2019 and repeat RFAs in early 2021. (*Id*. at 66). The RFAs allegedly provided Plaintiff "quite a bit of relief." (*Id*.).

As part of this litigation, Plaintiff engaged Laura Lampton, RN, BSN, CRRN, CNLCP, with Vocational Economics, a litigation consulting firm, to prepare a long-term care plan and identify future medical costs Plaintiff would allegedly need as a result of the incident. (*See* Lampton Depo., p. 13 (pages cited from Laura Lampton's deposition are collectively attached hereto as **Exhibit C**); *see also* Lampton Report, attached hereto as **Exhibit D**). In order to prepare her report, Nurse Lampton reviewed Plaintiff's medical records from Aptiva Health and Norton Audubon Hospital; interviewed Plaintiff and Dr. Ganzel; and researched the costs of the medical treatments she beleived Plaintiff would need. (Lampton Depo., p. 8).

As part of her report and during her deposition, Nurse Lampton testified that Plaintiff will need two (2) RFAs every two (2) years for the remainder of his life (38.7 additional years). (*See* Exhibit D). She further testified that Plaintiff will need to visit a pain management specialist every two (2) years in order to undergo the RFAs. (*Id*.). Based on these conclusions, Nurse Lampton calculated that these future medical treatments and appointments will cost $217,633.00 over the

course of Plaintiff's life. (*Id.*). However, Nurse Lampton was not engaged, and acknowledged that she is not qualified, to provide medical opinions in this matter:

> Q: Okay. And you're not an expert on impacts or forces, correct?
>
> A: Correct.
>
> Q: Or an expert on seat belts?
>
> A: Correct.
>
> Q: And here you're not giving a medical doctor opinion, correct?
>
> A: Correct.
>
> Q: Your -- again, I guess, you're just opining on a potential life care plan?
>
> A: Correct. Based upon the recommendations of his -- of Dr. Ganzel.

(Lampton Depo., p. 48). Specifically, Nurse Lampton relied on Dr. Ganzel to conclude that Plaintiff will need RFAs for the remainder of his life:

> Q: In your opinion, do you come up with how many more times he's going to need these RFAs, or is that something Dr. Ganzel does?
>
> A: That was something that Dr. Ganzel told me.
>
> Q: Okay. And then again, I guess if we go to the next page, sort of the end of your introduction where you've gone over the medical records you've reviewed, your last sentence says that "It was noted that the natural history of the radiofrequency procedure is that it may need to be repeated at a period of anywhere from six months to two years." I guess again, that's what you got from Dr. Ganzel?
>
> A: Yes. Both in his medical records, as well as in my conversation with him.
>
> Q: Okay. And anywhere in there, did Dr. Ganzel say how many times he would need to have it repeated?
>
> A: What he told me was that to -- for them to be completed every two years would be reasonable to include in the life care plan, and there is no limit on the number of times that -- to repeat the injections, can be every six months to two years.

> Q: All right. If you go down, and so did – and did he have an estimate or no, or tell you how many times he thought it would be needed?
>
> A: He just said to include it every two years -- to include them.

(*Id*. at 51-52). In other words, Nurse Lampton's opinions as to the need for and frequency of the RFA procedures, which comprise over two-hundred thousand dollars in alleged future medical costs in her plan, are based solely on her belief as to Dr. Ganzel's expected opinions on that issue.

Notwithstanding Nurse Lampton's testimony that Dr. Ganzel has concluded that Plaintiff will need RFAs every other year for the remainder of his life, Dr. Ganzel has not expressed such an opinion, certainly not one to within a degree of reasonable medical certainty. In fact, at most he has offered speculation about what Plaintiff may or may not need in the future. He testified that Plaintiff "could" need future RFAs as frequently as every two years, but admits that he does not know whether Plaintiff will need these ongoing treatments:

> Q: I mean, is it your opinion that he's -- he would be doing this procedure every two years, or is it something different?
>
> A: **He could**. Again, that's something I always tell -- I tell the patients the same thing, I tell them I don't have a crystal ball, so I don't know how many more times they're going need this. We just repeat it when they need it done.
>
> …
>
> I guess it's going to be a case where, you know, it's a worst-case scenario that he might need this done multiple times. And eventually if it doesn't -- if it gets to a point where it's not working, I just -- I wouldn't do it on him anymore, because there are patients where that's the case after they -- after they've done three or four, they use -- or maybe five of these, then you do it again and it just -- it just doesn't work. And so that's it at the point that I tell them, well, so we're not going to repeat this because it – it's just, it's not working for you anymore.
>
> Q: So when is that likely to be the case with Terhune?
>
> A: **I don't know**.
>
> …

> Q: So, you know, he's 40, a little bit of 42, I think, maybe a little older at this point. I mean, at 50 years old, you know, **can you say with medical certainty he's still going to be needing ablations?**
>
> A: **I don't know**. The chances are that, you know, unless his -- unless something changes dramatically. And the other thing is that, you know, as people decondition and that kind of thing, it make symptoms worse. So if they're not, you know, patients aren't continuing an exercise program, if they gain weight, that kind of thing, then that's going to make them more prone to have -- to require more treatment.

(*See* Ganzel Depo., p. 61-64 (emphasis added) (pages cited from Dr. Ganzel's deposition are collectively attached hereto as **Exhibit E**)).

Notably, Dr. Ganzel testified that Plaintiff's most recent RFA treatment could be his last one:

> Q: … You just did another one [RFA treatment], and again, it sounds like that may last a while, it may last -- it may last a long while. And --
>
> A: Right.
>
> Q: -- **maybe the last one he ever needs**.
>
> A: **That's a -- always a possibility. Correct**.

(*Id*. at 56 (emphasis added)).

It is clear that Dr. Ganzel has not, and cannot, testify, within a degree of medical certainty, that Plaintiff will need RFAs every two (2) years for the remainder of his life. Accordingly, any opinion offered by Dr. Ganzel concerning Plaintiff's need for future RFAs or related testimony offered by Nurse Lampton concerning the cost of such treatment lacks reliability and should be excluded under FRE 702, *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and its progeny as discussed below.

# LAW & ARGUMENT

A.   **Rule 702 and *Daubert***

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. FRE 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed.R.Evid. 702.

As the party offering the expert testimony, Plaintiff has the burden of showing, by a preponderance of the evidence, that his expert's testimony is admissible. *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-94 (1993). In this case, Plaintiff must show that Dr. Ganzel and Nurse Lampton are not only qualified to render their opinions, but also that their opinions are reliable and relevant.

When a party's expert witness is challenged, the court assumes the role of gatekeeper to ensure that the expert witness's testimony is both relevant and reliable. *See Daubert*, 509 U.S. at 597. The party offering the expert testimony has the burden to show by a preponderance of the evidence that the expert's testimony is admissible. *Id*. at 592 n. 10; *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001).

i.   **Qualifications**

First, the witness must be qualified by "knowledge, skill, experience, training, or education." Fed.R.Evid. 702. If qualified, the expert may testify so long as their knowledge will aid the fact finder and their opinions are based on sufficient data, reliable methods, and the facts

of the case. *Id*. A district court has "considerable leeway" in making this determination. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). While the focus of this motion is not on the qualifications of Dr. Ganzel and Nurse Lampton generally, Defendants reserve their right to challenge their qualifications in the future if necessary and/or appropriate. Regardless of their qualifications, it cannot be said that their opinions concerning Plaintiff's need for and costs of future RFAs will aid the jury.

### ii. Reliability

The Court must then determine the reliability of the expert testimony. Under *Daubert*, the trial court functions as a "gatekeeper" charged with keeping out unreliable, pseudoscientific evidence:

> [T]he trial judge must determine at the outset... whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Daubert*, 509 U.S. at 592-593.

With regard to the reliability prong, "Rule 702 guides the trial court by providing general standards to assess reliability; whether the testimony is based upon 'sufficient facts or data,' whether the testimony is the 'product of reliable principles and methods,' and whether the expert 'has applied the principles and methods reliably to the facts of the case.'" *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (citing Fed.R.Evid. 702). The Supreme Court has also presented a number of factors that courts may consider to determine whether expert testimony is reliable: (1) whether the theory or technique used can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error and the existence of standards controlling its operation; and (4)

whether the theory or technique enjoys general acceptance in a relevant community. *See Daubert*, 509 U.S. at 593-94.

This is a fact intensive inquiry that is generally subject to the discretion of the trial court in the exercise of its gatekeeping role in screening the reliability of an expert's testimony. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529; *See also Kumho Tire Co.*, 526 U.S. at 150 (holding that "the gatekeeping inquiry must be tied to the facts of a particular case, ...depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."). Thus, "[t]he task for the trial court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529-30 (citing Fed.R.Evid. 702).

The Sixth Circuit has noted several "red flags" cautioning against certifying an expert, including "reliance on anectodal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012) (citing *Best v. Lowe's Home Ctrs. Inc.*, 563 F.3d 171, 177 (6th Cir. 2009). In addition, if the expert's opinion was prepared solely for litigation, the trial court may also consider that fact as a basis of exclusion. *Id.* (citing *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 434 (6th Cir. 2007)). The magic phrase "within a reasonable degree of medical certainty," does not automatically make a causation opinion admissible. *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671 (6th Cir. 2010). **But, an opinion that is not based on a degree of medical certainty cannot aid the trier of fact and must be excluded.** *See e.g., Sakler v. Anesthesiology Assoc., P.S.C.*, 50 S.W.3d 210, 213 (Ky. App. 2001). Importantly, to be admissible, expert

opinions concerning future medical treatment must be rendered in terms of probability, not mere possibility. *See, Combs v. Stortz,* 276 S.W.3d 282, 296 (Ky.App. 2009).

### iii. Relevance

As with all evidence, relevance must also be considered when determining the admissibility of expert testimony. *See* Fed.R.Evid. 401 and 402. The Supreme Court has explained that to be relevant, the testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. The testimony must also "fit" the case, i.e. it must be sufficiently tied to the facts of the case such that it will aid the jury in resolving a factual dispute. *Id*.

> 'Fit' is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes.... The study of the phases of the moon, for example, may provide valid scientific 'knowledge' about whether a certain night was dark, and if darkness is a fact at issue, the knowledge will assist the trier of fact. However, (absent credible grounds supporting such a link), evidence that the moon was full on a certain night will not assist the trier of fact in determining whether an individual was unusually likely to have behaved irrationally on that night. Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility.

*Daubert*, 509 U.S. at 592.

Moreover, even if the Court were to find that the challenged expert testimony is relevant, it may still be excluded pursuant to FRE 403 if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. The need for a thorough Rule 403 analysis of expert testimony is particularly important, because as the Supreme Court recognized in *Daubert*, "expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing

possible prejudice against probative force under Rule 403 ... exercises more control over experts than lay witnesses." *Daubert*, 509 U.S. at 595.

**B.     Dr. Ganzel's "Expert" Opinion Is Pure Speculation And, Therefore, Not Admissible.**

Dr. Ganzel's opinion regarding Plaintiff's need for repeated RFAs for the remainder of Plaintiff's life are not expressed in terms of a reasonable degree of medical certainty and, as such, are neither admissible nor sufficient to form the foundation for Nurse Lampton to render her cost projections. In fact, by Dr. Ganzel's own admission, he does not know whether Plaintiff will need additional RFAs in the future. (Ganzel's Depo., pp. 61-64). Notably, he acknowledged that the RFAs Plaintiff received earlier this year "could" be the last he will need. (*Id.*, at. 56). Moreover, Nurse Lampton simply relies on Dr. Ganzel's speculation to determine the amount of RFAs Plaintiff could need in the future to reach a cost calculation.

In discussing his opinions regarding the amount of RFAs Plaintiff could need in the future, Dr. Ganzel spoke in generalities, but acknowledged that all patients respond differently to RFAs. Moreover, he outright admitted that he cannot say within a medical certainty that Plaintiff will need RFAs in the future:

> Q:     So, you know, he's 40, a little bit of 42, I think, maybe a little older at this point. I mean, at 50 years old, you know, can you say with medical certainty he's still going to be needing ablations?
>
> A:     I don't know.

(*Id*. at 64). A reading of Dr. Ganzel's testimony as a whole clearly shows that his opinion is not that Plaintiff will, or will most likely, need RFAs every two (2) years for the remainder of his life, but that it is a possibility. He testified that Plaintiff "could" need them, not that he will need them or even that they are reasonably certain to occur. This, of course, is not sufficient expert testimony to prove causation in a negligence action or to demonstrate the need for future medical care. *See*,

*Sakler*, 50 S.W.3d at 213; FRE 401 and 402.  "[N]o matter how good" experts' "credentials" may be, they are "not permitted to speculate." *Tamraz*, 620 F.3d at 671 (*quoting Goebel v. Denver & Rio Grande W. R.R. Co.,* 215 F.3d 1083, 1088 (10th Cir.2000).  Dr. Ganzel and Nurse Lampton "may be a 'distinguished' doctor [and nurse], and 'his conjecture' about causation may be 'worthy of careful attention.... But the courtroom is not the place for scientific guesswork, even of the inspired sort.'" *Id*. (*quoting Rosen v. Ciba–Geigy Corp.,* 78 F.3d 316, 319 (7th Cir.1996).

Stated another way, Dr. Ganzel's testimony on this issue would be speculative and highly prejudicial—in essence leaving the final opinion about whether future RFA procedures were needed to be guessed at by the Jury—while providing very little probative value.  Therefore, his opinions about future RFA procedures should be excluded pursuant to FRE 403 as well.

C. **Nurse Lampton's Cost Projections Rely on Ganzel's Inadmissible Opinion, which Renders Her Opinions Inadmissible.**

The same must be said for Nurse Lampton's calculations concerning the cost of future RFAs and medical appointments, which rely solely on Ganzel's opinions.  Although perhaps subject to other criticisms pertaining to admissibility, the threshold question of the admissibility of Lampton's opinions about the cost of future RFAs is whether her opinions rest upon a valid and admissible medical opinion that these procedures are in fact reasonably certain to occur.  In other words, her opinions are only admissible to the extent Dr. Ganzel's opinion is admissible, which it is not.  As such, her opinions on cost projection must be excluded as well.

Accordingly, Defendants respectfully request the Court exclude any evidence or testimony related to Plaintiff's need for future RFAs and associated medical appointments.

## CONCLUSION

Based on the foregoing, it is respectfully submitted that Dr. Ganzel's testimony and opinion that Plaintiff will need RFAs every two (2) years for the remainder of his life is not reliable or

relevant because they do not indicate that these future procedures are reasonably certain to occur, as required under Kentucky law. As such, Dr. Ganzel's opinion testimony concerning Plaintiff's need for future RFAs, as well as Nurse Lampton's opinions concerning the cost of such treatments, should be excluded pursuant to FRE 702, *Daubert* and its progeny, along with FRE 403. Therefore, it is respectfully requested that this Court enter the attached Order excluding Dr. Ganzel's and Nurse Lampton's testimony as to Plaintiff's need and associated costs of RFAs in this case.

                                            Respectfully Submitted,

                                            */S/James T. Blaine Lewis*
                                            James T. Blaine Lewis
                                            Loren Prizant
                                            Matthew Dearmond
                                            MIDDLETON REUTLINGER
                                            401 S. Fourth St., Suite 2600
                                            Louisville, KY 40202
                                            PH: 502-584-1135
                                            blewis@middletonlaw.com
                                            lprizant@middletonlaw.com
                                            mdearmond@middletonlaw.com
                                            *Attorney for the Defendants, Leslie K. Cooksey*
                                            *and AAA Cooper Transportation*

## CERTIFICATE OF SERVICE

       I hereby certify that on the **10th** day of September 2021 the foregoing was electronically filed through the Court's ECF system and a true and correct copy was served upon the following parties through their respective counsel of record via email:

Danielle Reesor Blandford, Esq.
MORGAN & MORGAN
420 West Liberty Street, Suite 260
Louisville, Kentucky 40202-3048
dblandford@forthepeople.com
*Attorney for the Plaintiff, Charles Terhune*

                                            */S/ James T. Blaine Lewis*
                                            James T. Blaine Lewis