**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:20-CV-00611-DJH-CHL**

**CHARLES TERHUNE,**                                                                                  **Plaintiff,**

**v.**

**LESLIE K. COOKSEY , et al.,**                                                                        **Defendants.**

### REPORT AND RECOMMENDATION

Before the Court is the Proposed Motion to Exclude Testimony and Evidence from Plaintiff's Expert Witnesses filed by Defendants Leslie K. Cooksey ("Cooksey") and AAA Cooper Transportation (collectively "Defendants"). (DN 26.) Plaintiff Charles Terhune ("Plaintiff") has filed a response in opposition (DN 28), to which Defendants have filed a reply (DN 29). United States District Judge David J. Hale referred Defendants' motion to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (DN 34.) This matter is now ripe for review.

**I.     FINDINGS OF FACT**

This matter arises from a March 29, 2019 automobile accident involving Plaintiff and Cooksey. (DN 1-2, at PageID # 16.) Cooksey was driving a truck traveling southbound on South 7th Street in Louisville, Kentucky approaching the intersection with West Magnolia Avenue. (DN 26-2, at PageID # 150.) Plaintiff had been traveling eastbound on West Magnolia Avenue and entered the intersection past a green traffic light. (*Id.*) The traffic light facing Cooksey was red when he entered the intersection and collided with the vehicle driven by Plaintiff. (*Id.*) The front bumper of Cooksey's truck struck the front driver's side of Plaintiff's car. (*Id.*) Louisville Metro Police Officer Simone Greenwade arrived at the scene at 6:58 AM and completed an incident

report. (*Id.* at 149–52.) Both Plaintiff and Cooksey denied needing medical assistance to Officer Greenwade. (*Id.* at 150.)

During his deposition on February 26, 2021, Plaintiff testified that he began feeling "a burning sensation and pinching pain" in his lower back within an hour of the collision. (DN 26-3, at PageID # 156.) Plaintiff presented for hospital treatment and eventually was referred to Aptiva Health for further treatment. (*Id.* at 156–58; DN 20-1, at PageID # 88–89.) Plaintiff received physical therapy at Aptiva Health for several months before beginning treatment by Dr. Steven Ganzel, DO, MS ("Dr. Ganzel") on July 11, 2019. (DN 26-3, at PageID # 157–158; DN 28-2, at PageID # 214; DN 20-1, at PageID # 89.) Dr. Ganzel recommended that Plaintiff undergo radiofrequency nerve ablation ("RFA"), a process that he describes as "essentially knocking out the nerve or we're cauterizing the nerve that goes to the joint." (DN 28-2, at PageID # 217.) Dr. Ganzel describes his process for recommending RFA treatment to a patient as follows:

> (RFA) is performed when a patient has backpain which does not result in radiculopathy and all other conservative treatments have failed. To determine if an RFA will be successful, I perform diagnostic injections in the pain-generating area and wait for the patient's subjective statements of whether he or she has any pain relief in that area . . . The diagnostic injections are called branch blocks and I perform a series of two diagnostic injections. These are called diagnostic injections because if they work in creating sufficient pain relief for the patient, the patient would then be a candidate for the RFA procedure. The first of the two injections involve injecting lidocaine, which is a short-acting anesthetic and a steroid, to help lengthen the effectiveness of the injection. If the patient reports sufficient pain relief, I will perform a second similar injection. The second injection is an injection of Marcaine, a longer lasting anesthetic, and steroid. If the patient again has sufficient pain relief from the diagnostic injections, I will recommend that we move forward perform the RFA procedure.

(DN 28-1, at PageID # 208.)

Plaintiff received diagnostic injections on July 15, 2019 and August 8, 2019, and underwent RFAs to his L3, L4, and L5 vertebrae on the left side on September 5, 2019 and on the right side on September 16, 2019. (DN 20-1, at PageID # 89–90.) Dr. Ganzel repeated the procedure, performing an RFA to Plaintiff's left side on February 17, 2021 and to his right side on March 17, 2021. (DN 28-2, at PageID # 226.) During a follow-up appointment on April 5, 2021, Plaintiff reported that he was "80 to 85 percent improved" and "reported sufficient pain relief from procedures." (*Id.*; DN 28-1, at PageID # 209.) As a result, Dr. Ganzel "set him up to follow up on an as-needed basis, and [] told him that he doesn't need to come back until his symptoms recur." (*Id.*) There is no indication in the record that Plaintiff returned for treatment by Dr. Ganzel since that time.

On March 10, 2021, Plaintiff served his expert disclosures pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, in which he disclosed the report of Laura Lampton, RN, BSN, CRRN, CNLCP ("Nurse Lampton"). (DN 20-1.) Nurse Lampton is employed by Vocational Economics Inc., a litigation consulting firm specializing in life care planning, vocational assessments, economic evaluations. (DN 26-4, at PageID # 163.) Plaintiff engaged Nurse Lampton to create a life care plan, which she describes as "an evaluation or assessment of an individual following an accident or an injury to assess their future health and medical care needs." (*Id.*) In her report, Nurse Lampton opines that as a part of his life care plan, Plaintiff will require lumbar MRI, RFA, and consultation with a pain management specialist every two years for the remainder of his life. (DN 20-1, at PageID # 94.) Nurse Lampton estimates that these future RFAs will cost $212,126. (*Id.*) On March 25, 2021, the Parties conducted Nurse Lapton's deposition. (DN 26-4.) During the deposition, Nurse Lampton testified that her including these RFAs in Plaintiff's life care plan was "based upon the recommendations of [] Dr. Ganzel." (DN

3

26-4, at PageID # 164.) Nurse Lampton further testified that the number of future RFAs in the life care plan "was something that Dr. Ganzel told [her]." (*Id.* at 165.) Specifically, Nurse Lampton testified that Dr. Ganzel advised her that "for them to be completed every two years would be reasonable to include in the life care plan, and there is no limit on the number of times that -- to repeat the injections, can be every six months to two years." (*Id.* at 166.)

On April 12, 2021, the Parties conducted Dr. Ganzel's deposition. (DN 26-6.) The portions of the deposition transcript filed in the record that concern Plaintiff's need for future RFAs are as follows:

> Q: So can you say, you know, one way or the other whether [Plaintiff] will need another block – and, excuse me another ablation, and if so, when?
>
> A: I would say the chances are he will need it done again, just how long that – the next procedure – since I've just finished doing a repeat bilateral RF[A] on him, how long that will last him, I have no idea.
> . . .
> Q: And so he, you know, may need one in – he may need one in six months, yeah, he may need one in two years, he may need one in five years, he may never need one.
>
> A: Correct.
>
> Q: Fair?
>
> A: In theory, correct.
> . . .
> Q: You just did another [RFA], and again, it sounds like that may last a while, it may last – it may last a long while. And –
>
> A: Right.
>
> Q: -- maybe the last one he ever needs.
>
> A: That's – always a possibility. Correct.
>
> Q: Okay. I mean, so given that – are you able to say with medical probability that he'll need any [RFA] again?

4

> A: Well, as a general rule because we know that he's still going to have the facet arthritis. If he's symptomatic, then he would require another [RFA].
> . . .
> Q: So is it your – do you have an opinion I guess, or – and is it your testimony that [Plaintiff], for example, is still having back pain that is related to this car accident, or is the back pain simply a part of a, you know, another etiology, namely arthritis?
>
> A: . . . I have to assume that symptoms that he was having are coming from the arthritis that was actually aggravated or was, you know – you know, the symptoms were caused by the accident, and the fact that he responded to the RF[A] procedure, I mean, obviously that's the source of his pain. Now he just came back – I mean, I saw him again on April 5th. So that was just a few days ago, and saw him back after I'd repeated the second side of his procedure. And now he says he's 80 to 85 percent improved . . . But because he was 80 to 85 percent improved, I actually set him up to follow up on an as-needed basis, and I told him that he doesn't need to come back until his symptoms recur.
> . . .
> Q: And that – so that was the last RFA that that – you said that was –
>
> A: Yeah. The second – the one that I – yeah. His repeat RF[A] that I just did . . . So his left one was done on 2-17-21 and his right one was done on 3-17-21. And he just saw me in the clinic on 4-5-21, and that's when he told me he was 80 to 85 percent improved overall. And I set him up to follow up as needed. Because I told him he doesn't need to come back until his symptoms recur.
>
> Q: Okay. And that was the same thing you said the first time and it was, you know –
>
> A: Correct.
>
> Q: -- from say July – wait a second.
>
> A: Previous RF[A] was –
>
> Q: September 2016 to January or February '21?
>
> A: Correct.

Q: And so then you say, you know, the – I have the record from the first one, and it sounds like your opinion is the same from the second one, is that, you know, you come back as needed PRM [sic]?

A: Correct. Yeah . . . You know, my – my whole purpose of joining Aptiva was to be able to treat patients like I treated in [Plaintiff's] case, where I can treat them, they're good, they don't have to come back and see me, they don't have to keep coming back to do follow-up appointments until their symptoms recur.

Q: So I guess I just need to ask you. I mean, is it your opinion that he's – he would be doing this procedure every two years, or is it something different?

A: He could . . . I guess it's going to be a case where, you know, it's a worst-case scenario that he might need this done multiple times. And eventually if it doesn't – if it gets to a point where it's not working, I just – I wouldn't do it on him anymore because there are patients where that's the case after they – after they've done three or four, they use – or maybe five of these, then you do it again and it just – it just doesn't work. And so that's it at the point that I tell them, well, so we're not going to repeat this because it – it's just not working for you anymore.

Q: So when is that likely to be the case with [Plaintiff]?

A: I don't know.

Q: Okay.

A: Yeah. That's – that's – that's what it's hard to tell because it might continue to work.
. . .
Q: So, you know, he's 40, a little bit of 42, I think, maybe a little older at this point. I mean, at 50 years old, you know, can you say with medical certainty he's still going to be needing [RFAs]?

A: I don't know. The chances are that, you know, unless his – unless something changes dramatically.
. . .
Q: If he gets a stretching routine, he gets a, you know, a little bit of a workout routine, does some things to stabilize himself muscular-wise, and actually, it could improve, fair?

6

>> A: But the pathology is still going to be there. So again, it's something if we have to treat it, we have to treat it based on symptoms.

(DN 28-2, at PageID # 219–20, 223–31.)

## II.   CONCLUSIONS OF LAW

### A.  Evidentiary Hearing

After reviewing the Parties' briefs, the undersigned finds that there is an adequate basis in the record from which to determine the qualifications of the experts at issue and the relevance and reliability of their proposed testimony. Though Fed. R. Civ. P. 26(a)(2) requires only disclosure of a party's expert witnesses subject to the conditions therein and Fed. R. Civ. P. 5(d)(1)(A) directs that expert disclosures made pursuant to Fed. R. Civ. P. 26(a)(2) not be filed in the record "until they are used in the proceeding," Plaintiff generally filed the relevant disclosures in the record separately and in advance of the briefing on Defendants' motion to exclude. (DN 20.) The Parties also filed relevant excerpts of the deposition transcripts of the experts and witnesses at issue. (DN 26-3; DN 26-4; DN 26-6; DN 28-2; DN 28-3; DN 28-4; DN 29-2.) Thus, the undersigned finds no evidentiary hearing is necessary to resolve the instant motion. *See Zuzula v. ABB Power T & D Co.*, 267 F. Supp. 2d 703 (E.D. Mich. 2003) (citing *Greenwell v. Boatwright*, 184 F.3d 492, 498 (6th Cir. 1999)) (finding that no evidentiary hearing was necessary to resolve *Daubert* motions where "the parties ha[d] submitted sufficient information to permit the Court to adjudicate the motions").

### B.  Dr. Ganzel's Opinion

Defendants seek to exclude the opinion of Dr. Ganzel that Plaintiff will need RFAs every two years for the remainder of his life. (DN 26-1, at PageID # 145–47.) In their motion, Defendants argue that "[a] reading of Dr. Ganzel's testimony as a whole clearly shows that his opinion is not that Plaintiff will, or will most likely, need RFAs every two (2) years for the

7

remainder of his life, but that it is a possibility." (DN 26-1, at PageID # 145.) In his response, Plaintiff argues that "Dr. Ganzel's testimony is clearly sufficient to substantiate the claim for future RFA procedures." (DN 28, at PageID # 200.) To further substantiate Dr. Ganzel's opinion, Plaintiff attached as an exhibit to his response an affidavit in which Dr. Ganzel states that he will testify "within a reasonable degree of medical probability, it is reasonable that Mr. Terhune will need to have the procedure repeated every 2 years for the rest of his life." (DN 28-1, at PageID # 209.) In their reply, Defendants argue that in filing Dr. Ganzel's affidavit, "Plaintiff has attempted to supplement Dr. Ganzel's opinion for the sole purpose of defeating Defendant's Motion." (DN 29, at PageID # 248.) Defendants note that Plaintiff's expert disclosures did not disclose that Dr. Ganzel would opine that Plaintiff would need future RFAs and argues that Dr. Ganzel's affidavit effectively seeks to amend Plaintiff's expert disclosures six months after the disclosure deadline. (*Id.* at 245, 248–49.)

### 1. Dr. Ganzel's Untimely Affidavit Should Be Excluded

The affidavit filed as an exhibit to Plaintiff's response was signed by Dr. Ganzel on September 21, 2021, eleven days after Defendants filed the instant motion. (DN 28-1, at PageID # 211.) Plaintiff argues that Dr. Ganzel's prior "deposition testimony is further substantiated" by his statements in the affidavit. (DN 28, at PageID # 200.) In their reply, Defendants argue that the Court should "strike or ignore" the affidavit as a procedurally improper attempt to supplement his expert disclosures and alternatively argue that the affidavit does not cure the deficiencies in Dr. Ganzel's deposition testimony. (DN 29, at PageID # 248–50.) In the affidavit, Dr. Ganzel summarizes his qualifications and experience, the RFA procedure, and Plaintiff's treatment history. (DN 28-1, at PageID # 207–09.) Dr. Ganzel concludes by stating that he will offer testimony that, among other things, "[Plaintiff] will need to have the RFA procedure repeated at

8

least every two years for the rest of his life which will require visits with the treating physician and anti-inflammatory medications and muscle relaxers." (DN 28-1, at PageID # 210.) Plaintiff does not explain why he should be permitted to "further substantiate[]" Dr. Ganzel's testimony with discovery taken outside the discovery deadline and after Defendants filed their motion to exclude. (DN 28, at PageID # 200.) Given the contents of the affidavit, it could be construed as an attempt to supplement his Rule 26(a)(2)(C) disclosure or testimony or as a disclosure of a Rule 26(a)(2)(B) expert witness report. In either event, the disclosure was untimely because it was filed over two months after the deadline for supplementations pursuant to Rule 26(e) and over six months after his deadline for expert witness disclosures, without any motion for leave to supplement Ganzel's report. (*See* DN 16.)

"District courts have broad discretion to exclude untimely disclosed expert-witness testimony." *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000) (citing *Trilogy Commc'ns v. Times Fiber Commc'ns*, 109 F.3d 739, 745 (Fed. Cir. 1997)) (upholding the exclusion of untimely expert supplemental reports and affidavit submitted in violation of court's scheduling order). After a thorough review of the record, it is clear that Dr. Ganzel's affidavit disclosed an entirely new opinion regarding Plaintiff's need for future RFAs that was not mentioned in Plaintiff's expert disclosures or in Dr. Ganzel's deposition. In his Rule 26(a)(2)(C) statement, Plaintiff disclosed that Dr. Ganzel was "expected to testify regarding the future cost projection and report provided by Laura Lampton and the reasonableness and necessity of future care." (DN 20, at PageID # 83.) During his deposition, Dr. Ganzel was asked "is it your opinion that he's – he would be doing this procedure every two years, or is it something different?" (DN 26-6, at PageID # 181.) In response, Dr. Ganzel testified: "He could . . . it's a worst-case scenario that he might need this done multiple times." (*Id.* at 181–82.) In contrast, in the affidavit, Dr. Ganzel opines "within a reasonable degree

9

of medical probability" that Plaintiff *will require* RFAs every two years for the rest of his life. (DN 28-1, at PageID # 210.) "The difference between the two disclosures is dramatic. The second disclosure provides opinions that go to the heart of the case. The first is tantamount to a non-opinion." *Keener v. United States*, 181 F.R.D. 639, 641 (D. Mont. 1998).

Generally, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial." Fed. R. Civ. P. 37(c). Exclusion is not appropriate, however, when "the failure was substantially justified or is harmless." *Id.* Here, Plaintiff has provided *no* justification for the untimely disclosure and the undersigned sees none. Dr. Ganzel was deposed on April 12, 2021, three months before the supplementation deadline and four months before the discovery deadline. "This was more than ample opportunity to 'clarify' the nature and scope of his expert opinions." *Wannall v. Honeywell Int'l, Inc.*, 292 F.R.D. 26, 35 (D.D.C. 2013), *aff'd sub nom. Wannall v. Honeywell, Inc.*, 775 F.3d 425 (D.C. Cir. 2014). Additionally, the affidavit includes no information that was previously unknown or unavailable to Plaintiff or Dr. Ganzel. *See Keener*, 181 F.R.D. at 640. Indeed, the affidavit indicates that Dr. Ganzel has not treated Plaintiff since April 5, 2021, a week before Dr. Ganzel's deposition. (DN 28-1, at PageID # 209.) The undersigned finds that Plaintiff's omission was not harmless. Defendants proceeded with their trial preparation in reliance on Dr. Ganzel's deposition testimony without any expectation that Dr. Ganzel would materially alter his testimony in favor of Plaintiff's future damages claim after the close of discovery. Moreover, to permit supplementation "whenever a party wants to bolster or submit additional expert opinions would [wreak] havoc in docket control and amount to unlimited expert opinion preparation." *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002). Because neither of the Rule 37(c) exceptions applies to Dr. Ganzel's untimely affidavit,

the undersigned will recommend that the affidavit be excluded and will not rely on any of the statements therein in considering the proper scope of Dr. Ganzel's testimony.

### 2. Dr. Ganzel's Opinion Exceeds the Scope of Rule 26(a)(2)(C) Testimony

Rule 26(a)(2)(B) requires that the disclosure of experts retained or specially employed to provide expert testimony be accompanied by a written report prepared and signed by the expert. For expert witnesses not required to provide a written report, Rule 26(a)(2)(C) requires the party to disclose the subject matter on which the expert will testify, as well as a summary of the facts and opinions to which the expert will testify. Treating physicians may provide testimony pursuant to either Rule 26(a)(B) or (C), but Rule 26(a)(2)(C) limits expert testimony to the "core" of the patient's treatment, meaning what the physician "learned through actual treatment and from the plaintiff's records up to and including that treatment." *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 871 (6th Cir. 2007). "In determining whether a Rule 26(a)(2)(B) report is required, Plaintiffs bear the burden of demonstrating that a full-blown expert report is not required and 'the label of "treating physician" is irrelevant; instead, the determination turns on the substance of the physician's testimony.'" *Avendt v. Covidien Inc.*, 314 F.R.D. 547, 559 (E.D. Mich. 2016) (quoting *In re Denture Cream Prods. Liab. Litig.*, No. 09–mdl–2051, 2012 WL 5199597, at *4 (S.D. Fla. Oct. 22, 2012)).

Here, Plaintiff disclosed Dr. Ganzel as a witness who will not provide a written report pursuant to Rule 26(a)(2)(C). (DN 20, at PageID # 82.) As a result, the testimony of Dr. Ganzel must be limited to the "core" of Plaintiff's treatment.[1]

---

[1] The undersigned notes that Defendants do not directly challenge the admissibility of Dr. Ganzel's testimony on this basis. However, "[a] district court's *Daubert* inquiry need not take any specific form, and its *sua sponte* consideration of the admissibility of expert testimony is permissible so long as the court has an adequate record on which to base its ruling." *Miller v. Baker Implement Co.*, 439 F.3d 407, 413 (8th Cir. 2006) (affirming the district court's *sua sponte Daubert* analysis on a motion to designate an expert witness outside of the deadline). The undersigned finds that it is unnecessary under the circumstances to provide notice to Plaintiff in advance of issuing the instant recommendation

11

> Courts attempting to determine whether a physician's testimony regarding causation falls into this 'core' have considered factors such as: (1) whether the physician reached his conclusion at the time of treatment; (2) whether the opposing party would be surprised by the testimony; (3) whether the condition at issue leaves room for debate as to the specific ailment and its sources; (4) whether the physician relied upon ordinary medical training in drawing his conclusion; and (5) whether the physician will rely on tests, documents, books, videos, or other sources not relied upon during treatment.

*Hinkle v. Ford Motor Co.*, No. CIV. A. 3:11-24-DCR, 2013 WL 1992834, at *2 (E.D. Ky. May 13, 2013). *See Fielden*, 482 F.3d at 871–72.

Applying these factors to Dr. Ganzel's opinion regarding Plaintiff's need for future RFAs,[2] the undersigned concludes that it falls outside the core of Plaintiff's treatment. First, "[t]here is no evidence that Dr. [Ganzel] reached the same conclusions regarding [future RFAs] at the time he treated [Plaintiff]." *Mohney v. USA Hockey, Inc.*, 138 F. App'x 804, 811 (6th Cir. 2005) (concluding that "it was reasonable for the district court to find that [the treating physician] was rendering an expert opinion that was subject to disclosure requirements and to exclude his [opinion] for failing to satisfy those requirements"). In fact, Plaintiff's claim for future RFAs is inconsistent with Dr. Ganzel's findings at the time of treatment. Dr. Ganzel testified that at his most recent examination on April 5, 2021, Plaintiff showed unusual improvement causing Dr. Ganzel to "set him up on an as-needed basis, and [] told him that he doesn't need to come back

---

of his intent to do so. Since the undersigned is issuing a report and recommendation on the instant motion, Plaintiff will have an opportunity to file objections contesting the undersigned's findings. Fed. R. Civ. P. 72(a).

[2] The particulars of Dr. Ganzel's opinion are disputed. Plaintiff's Rule 26(a)(2)(C) statement merely discloses that Dr. Ganzel will testify as to the "reasonableness and necessity of future care." (DN 20, at PageID # 83.) While Defendants seek to exclude the opinion that Plaintiff will require future RFAs every two years for the remainder of his life, their motion essentially argues that Dr. Ganzel never actually expressed this opinion. (*See* DN 26-1, at PageID # 137–40, 146–47.) Although Plaintiff's response argues that Dr. Ganzel's testimony supports his opinion that the "exact treatment" Plaintiff will need is to repeat the RFA procedure every two years for the remainder of his life, (DN 28, at PageID # 197), Plaintiff's response often conflates an opinion regarding Plaintiff's need for future RFAs generally with the opinion regarding the number of future RFAs that Defendants' seek to exclude. (*Id.* at 190, 192, 197, 200, 204.)

12

until his symptoms recur." (DN 28-2, at PageID # 225–26.) Dr. Ganzel has not examined or further treated Plaintiff subsequent to making that recommendation. *See Avendt*, 314 F.R.D. at 559 (finding that opinion regarding the need for future treatment exceeded the scope of Rule 26(a)(2)(C) testimony because treating physician had not formed an opinion regarding the plaintiff's future needs at the time of treatment and had not seen the plaintiff since the time of treatment). *Cf. Chancellor v. Church & Dwight Co.*, No. 5:20-CV-00145-TBR, 2021 WL 4524179, at *2 (W.D. Ky. Oct. 4, 2021) (finding that a treating physician's testimony fell within the core of the plaintiff's treatment when it was "based on his experience, the examination of the patient, and her history without any mention of outside materials"). Rather than relying on information he learned in diagnosing and treating Plaintiff, Dr. Ganzel's opinion regarding Plaintiff's need for future RFAs relies solely on outside sources. For example, when asked about Plaintiff's need for future RFAs, Dr. Ganzel referenced anecdotal examples of other patients that have needed repeated RFAs. (DN 29-2, at PageID # 261–62, 265.) *See Highley v. 21st Century Ins. Co.*, No. 5:17-CV-213-CHB, 2018 WL 3762978, at *4 (E.D. Ky. Aug. 8, 2018) (finding that a treating physician's testimony was not probative of future damages when he "offers only an estimate of *other* patients who *may* require future medical attention") (emphasis in original). Dr. Ganzel also relies on uncited literature from the Spinal Intervention Society showing that "[t]he range of effectiveness of an RF[A] procedure is anywhere from six months to 24 months, depending on the patient." (DN 29-2, at PageID # 260.) Clearly, "[s]uch literature is well outside the 'core' of [Plaintiff]'s treatment." *Auto-Owners Ins. v. Aspas*, No. 3:16-CV-189-DJH-RSE, 2018 WL 4643190, at *5 (W.D. Ky. Sept. 27, 2018). When an expert's opinion relies on uncited scientific literature, "particularly in an area of medical specialization and scientific study such as that at issue in this case," an expert report is required. *Avendt*, 314 F.R.D. at 560. This is because,

when "a treating physician relies on tests, documents, books, videos, or other sources that the physician did not rely upon during his or her treatment of the patient . . . , the treating physician is acting like the retained expert who normally reviews materials that the parties provide." *Fielden*, 482 F.3d at 872.  Additionally, assessing patients' future treatment needs is not "an integral part" of Dr. Ganzel's practice.  *Id.* at 870 (discussing circumstances under which a treating physician may offer opinions on causation without completing an expert report).  In fact, the opposite appears to be the case.  When asked about Plaintiff's need for future RFAs, Dr. Ganzel testified: "I always tell – I tell patients the same thing, I tell them I don't have a crystal ball, so I don't know how many more times they're going to need this. We just repeat it when we need this done." (DN 29-2, at PageID # 265.)  Based on the record, it appears that Dr. Ganzel didn't form any opinion about Plaintiff's need for future RFAs outside the context of the litigation.

Reduced to the core of Plaintiff's treatment, Dr. Ganzel's testimony at most supports an opinion that Plaintiff will require future treatment, which may include future RFAs, only if his symptoms recur.  Because Dr. Ganzel's opinion regarding Plaintiff's need for future RFAs relied on information obtained outside the course of treatment and his opinions extended beyond the treatment rendered, Rule 26(a)(2)(B) required disclosure of a written report.[3]

Dr. Ganzel did not complete an expert report, and the deadline to do so was March 10, 2021, over nine months ago. (DN 16.)  As a result, Dr. Ganzel's testimony regarding Plaintiff's need for future RFAs should be excluded.  Fed. R. Civ. P. 37(c).  *See Auto-Owners Ins.*, 2018 WL 4643190, at *4 ("If the testimony of a Rule 26(a)(2)(C) expert goes beyond the 'core,' such extraneous portions typically must be excluded.") (quoting *Mohney*, 138 F. App'x at 811); *Mears*

---

[3] Perhaps "Plaintiff [] realized this disparity prior to filing his [response], and attempted to salvage part of his damages claim with further discovery." *Highley*, 2018 WL 3762978, at *4 (referencing a denied motion to supplement the record in denying summary judgment on future damages claim that relied on "only the insubstantial testimony of his treating physician").

14

*v. Safeco Ins. Co. of Ill.*, 888 F. Supp. 2d 1048, 1056 (D. Mont. 2012), *aff'd*, 572 F. App'x 503 (9th Cir. 2014) (excluding treating physician's opinion for lack of a written report when there was no evidence that opinion was formed during the course of treatment). However, exclusion is not mandatory if "the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c).

Here, Plaintiff's failure to meet the requirements of Rule 26(a)(2)(B) in seeking to offer Dr. Ganzel's opinion testimony regarding Plaintiff's need for future RFAs was neither substantially justified nor harmless. Plaintiff was aware that his claim for future RFAs relied on statements to Nurse Lampton by Dr. Ganzel on March 27, 2020, five months before filing this action and nearly one year before his expert disclosure deadline. Thus, Plaintiff had ample time to determine the basis of Dr. Ganzel's recommendation and assess the need for an expert report. Plaintiff has provided no explanation as to why Dr. Ganzel was not designated as a Rule 26(a)(2)(B) expert, nor has he identified any mistake in his designation. Even though the need for future medical treatment was essential to the Nurse Lampton's damage calculations, Plaintiff did not designate an expert to complete a report substantiating the claim for lifelong medical treatments at a cost of $212,126. Without an expert report, Defendants lacked notice of the scope of opinion testimony Plaintiff would offer and the basis and reasons for the testimony prior to conducting depositions. The lack of notice is evidenced by the fact that after the close of discovery, there was still room for debate as to exactly what Dr. Ganzel's opinion is. *See supra* note 2 and accompanying text. Plaintiff implicitly acknowledges the "remaining confusion" in filing Dr. Ganzel's September 21, 2021 affidavit. (DN 28, at PageID # 197.) Without such notice, Defendants lacked an adequate basis for rebuttal or cross examination. Because neither of the Rule 37(c) exceptions applies, the undersigned will recommend that Dr. Ganzel's testimony be

limited to the core of Plaintiff's treatment and that his opinion regarding Plaintiff's need for future RFAs be excluded.

### C. Nurse Lapton's Opinion

#### 1. Nurse Lampton's Opinion Should Be Excluded Under FRE 702 and 703

Rule 702 of the Federal Rules of Evidence, which governs the admission of expert testimony, provides,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. These prerequisites apply to not only to "scientific" testimony but to all expert testimony within the scope of Fed. R. Evid. 702. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting Fed. R. Evid. 702).

Under this Rule, the trial judge acts as a gatekeeper to ensure that expert testimony is both relevant and reliable. *See Clay v. Ford Motor Co.*, 215 F.3d 663, 667 (6th Cir. 2000) (citing *Kumho Tire*, 526 U.S. at 147 and *United States v. Jones*, 107 F.3d 1147, 1156 (6th Cir. 1997)); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Although there is no "definitive checklist or test" to strike this balance, relevant factors include: (1) whether a theory or technique "can be

(and has been) tested"; (2) whether a "theory or technique has been subjected to peer review and publication"; (3) the "known or potential rate of error"; and (4) whether the theory or technique is generally accepted. *Daubert*, 509 U.S. at 593-94. These factors are not exhaustive and the inquiry is "a flexible one," *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 677 (6th Cir. 2011) (citations omitted), for district courts must be mindful that "the gatekeeping inquiry must be 'tied to the facts' of a particular 'case.'" *Kumho Tire*, 526 U.S. at 150 (quoting *Daubert*, 509 U.S. at 591). Further, in assessing reliability, courts must focus "solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. The proponent of expert testimony "must establish its admissibility by a preponderance of proof." *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n.10); *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 478 (6th Cir. 2008).

Defendants allege that in engaging Nurse Lampton to opine as to the cost of future RFAs based on Dr. Ganzel's opinion regarding the need for future RFAs, "Plaintiff attempted to back door this expert opinion, which requires medical knowledge, through his life care plan expert." (DN 29, at PageID # 245.) Defendants argue that Nurse Lampton's opinion regarding the cost of future RFAs is "only admissible to the extent Dr. Ganzel's opinion [regarding the need for future RFAs] is admissible," because her opinion relies solely on Dr. Ganzel's recommendation. (DN 26-1, at PageID # 146.)

It is permissible for an expert to rely on otherwise inadmissible hearsay, including other experts, to support his or her opinion. *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728–29 (6th Cir. 1994). "Rules 702 and 703 do not, however, permit the admission of materials, relied on by an expert witness, for the truth of the matters they contain if the materials are otherwise inadmissible." *Id.*; *see also Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 409 (6th Cir.

17

2006) (finding that the district court erred when it allowed an expert to testify about the conclusions of another expert and to use the similarity in conclusion of that expert to his own to bolster his opinion). Instead, an expert witness can use this testimony to "explain the basis of the expert's opinion," and "[w]hen inadmissible materials are admitted for explanatory purposes, the opposing party is entitled to a limiting instruction to the jury that the evidence may be considered solely as a basis for the expert opinion and not as substantive evidence." *Engebretsen*, 21 F.3d at 728–29 (internal citations omitted); *see also Wilson By & Through Wilson v. Merrell Dow Pharm. Inc.*, 893 F.2d 1149, 1153 (10th Cir. 1990) ("We have interpreted Rule 703 as allowing an expert to reveal the basis of his testimony during direct examination, even if this basis is hearsay, provided that the facts or data underlying his conclusions are of a type reasonably relied upon by others in his field of expertise . . . The hearsay is admitted for the limited purpose of informing the jury of the basis of the expert's opinion and not for proving the truth of the matter asserted.") (internal citations omitted). This court has a duty "to make sure that the expert isn't being used as a vehicle for circumventing the rules of evidence." *In re James Wilson Assoc.*, 965 F.2d 160, 172 (7th Cir. 1992).

The undersigned finds that Nurse Lampton's opinion concerning the cost of future RFAs serves merely as a vehicle to transmit Dr. Ganzel's hearsay recommendation that Plaintiff will need RFAs every two years for the remainder of his life. Nurse Lampton's report states that "[i]n a phone consultation with Dr. Ganzel on March 27, 2020, he provided information regarding the future health and medical care needs that [Plaintiff] will require . . . ." (DN 20, at PageID # 90.) During her deposition, Nurse Lampton confirmed that Dr. Ganzel told her to include RFAs every two years for the remainder of Plaintiff's life in his life care plan. (DN 26-4, at PageID # 166.) Nurse Lampton's report does not independently corroborate Dr. Ganzel's recommendation or

18

assess Dr. Ganzel's reliability, but rather "adopt[s] [his] opinions wholesale." *Siegel v. Fisher & Paykel Appliances Holdings Ltd.*, No. 3:08CV-429-JDM, 2010 WL 4174629, at *2 (W.D. Ky. Oct. 19, 2010). *See Hot Wax, Inc. v. Warsaw Chem. Co.*, 45 F. Supp. 2d 635, 639 (N.D. Ill. 1999); *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt.*, LLC, No. CIV.A. 5:11-374-DCR, 2014 WL 1664263, at *6 (E.D. Ky. Apr. 25, 2014). Given the undersigned's recommendation that Dr. Ganzel's opinion regarding Plaintiff's need for future RFAs be excluded, it would be improper to allow Plaintiff "to present non-expert, otherwise inadmissible hearsay through the mouth of a[] [nurse]." *Law v. Nat'l Collegiate Athletic Ass'n*, 185 F.R.D. 324, 341 (D.Kan.1999). *See Mike's Train House*, 472 F.3d at 409 (excluding expert's testimony about another expert's report and opinions that were not admitted into evidence); *Stokes v. Xerox Corp.*, No. 05-71683, 2008 WL 275672, at *7 (E.D. Mich. Jan. 28, 2008) (finding that it would be prejudicial to allow expert to offer opinion relying on another expert who will not be called as a witness at trial); *Plourde v. Gladstone*, 190 F. Supp. 2d 708, 720 (D. Vt. 2002), *aff'd*, 69 F. App'x 485 (2d Cir. 2003) (in excluding toxicologist's expert testimony concerning physicians' medical opinions, the court noted that it was unclear whether the physicians would be made available to testify at trial). For these reasons the undersigned will recommend that Nurse Lampton's testimony regarding Plaintiff's need for future RFAs be excluded.

### III.  RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that DN 26 be **GRANTED** and that Dr. Ganzel's and Nurse Lampton's testimony regarding Plaintiff's need for future RFAs be **EXCLUDED**.

December 27, 2021

cc: Counsel of record

Colin H Lindsay, Magistrate Judge
United States District Court

### Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations.  A copy shall forthwith be electronically transmitted or mailed to all parties.  28 U.S.C. § 636(b)(1)(C).  Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal.  *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).